Parker C. J.
delivered the opinion of the Court. It appearing by the facts agreed, that the ground of recovery against the assessors was an irregularity in the assessment, and not any delect of power to raise the money, or any irregularity of proceeding before the duty of the assessors commenced, it is very clear that no action could be maintained by the assessors against the inhabitants of the town without an express promise by them founded upon a good and sufficient considera *24 tion; and the question therefore is, whether such a promise and consideration have been made to appear in the facts referred to the Court.
As evidence of a promise the plaintiff relies upon a vote of the inhabitants of the town, passed November 1, 1824, at a meeting duly warned and held for that purpose on that day, and another vote passed on May 30, 1825, on the same subject. In regard to the question, whether they amount to proof of a promise to the plaintiff, these two votes may be considered as one, the latter only extending the provisions of the former, and confirming its general purpose.
Before the passing of the first vote, the money sought to be recovered had been refunded to the several persons whose property had been distrained, and this fact may be presumed to have been known to the inhabitants when they took the subject into consideration; as also that the assessors had individually paid their proportions of the same ; so that if any promise is to be inferred from the votes, it may be taken distributively as a promise to each, and not as a joint promise to all.
The substance of the vote is to raise a sum sufficient to cover the whole amount of the taxes illegally assessed and the interest thereon, to provide a mode of collection which would operate as a just re-assessment and collection of the former taxes, so as to equalize the same on all the inhabitants, and to reimburse the several assessors the sums which they had seve rally paid to those inhabitants who had taken advantage of the informality of the assessment to resist the payment of the tax until it was enforced by the collector.
The general purpose of this vote was just and wise. The inhabitants, finding that three of their townsmen who had been elected by themselves to an office, which they could not, without incurring a penalty, refuse to accept, had innocently and inadvertently committed an error, which in strictness of law annulled their proceedings, and exposed them to a loss perhaps to the whole extent of their property, if all the inhabitants individually should avail themselves of their strict legal rights, — finding also that the treasury of the town had been supplied by the very money which these unfortunate individuals were obliged to refund from their own estates, and that so far as the *25 town tax went, the very persons who had rigorously exacted from the assessors, or who were about to do it, had themselves shared in due proportion the benefits and use of the money which had been paid into the treasury, in the shape of schools, highways, and various other objects which the necessities of a municipal institution call for, — concluded to re-assess the tax, and to provide for its collection in a manner which would have produced perfect justice to every individual of the corporation, and would have protected the assessors from the effects of their inadvertence in the assessment, which was found to be invalid. The inhabitants of the town had a perfect right to make this re-assessment, if they had a right to raise the money originally. The necessary supplies to the treasury of a town cannot be intercepted because of an irregularity in the mode of apportioning the sum upon the individuals. Debts must be incurred, duties must be performed by every town ; the safety of each individual depends upon the execution of the corporate duties and trusts. There is and must be an inherent power in every town to bring the money necessary for the purposes of its creation into the treasury, and if its course is obstructed by the ignorance or mistakes of its agents, they may proceed to enforce the end and object by correcting the means ; and whether this be done by resorting to their original power of voting to raise money a second time for the same purposes, or by directing to re-assess the sum before raised by vote, is im material; perhaps the latter mode is best; at least, it is equally good. Does any one suppose that the legislature, on discovering that a tax, constitutionally voted, but unduly or unequally apportioned upon the several towns, cannot by a new apportionment cause to be enforced the collection of the same tax, or if the assessment should fail by some mistake, — omitting, for instance, to assess one of the objects enumerated in the act as proper to be taxed, — that they could not, instead of exacting the money of the towns, and so exposing the assessors to personal loss, direct a re-assessment of the same tax conform-ably to the requisitions of the tax act ? We have no doubt their authority is competent to such a correction of errors, and the towns have over the subjects within their jurisdiction the same extent of authority. Suppose the collector, on the re *26 sistance of the first person on whom he called with his tax bill, had taken counsel and found that the assessment was illegal, and had concluded not to persist in his collection, could not the assessors have revised their doings even without the direction of the town, or could not the inhabitants have directed a re-assessment ? Most assuredly this could have been done. Does it make any difference in justice, or in the rights of the inhabitants, that this is done after the tax shall have been collected, when it is discovered that some of the inhabitants are about availing themselves of a common misfortune to aid their own private purposes and interests, to the great prejudice of their townsmen who have been the innocent authors of the evil ? We think not. They have a right to consider the tax as unpaid, unassessed, and to cause it to be assessed and paid, taking care that none who have before paid shall be made to pay again. Those who paid by compulsion, and have been reimbursed, are to be considered as never having paid, and they ought not to be allowed to share in the appropriation of moneys paid by others, and go free themselves.
The purpose and object of this vote being then legal and laudable, it is to be seen whether it amounts to a promise to the plaintiff, and whether if it does, the promise is sustained by a valid consideration.
The vote is “to direct the treasurer to pay over to Stearns, Perry and Nelson, or their heirs, or their executors or administrators, the amount of what they have advanced and paid for the use of said town, by' making up the deficiency of said tax and the interest thereon.” Here is a direct acknowledgment of a meritorious and legal consideration, and an unequivocal appropriation of funds to the payment of the assessors. A vote of this sort by a town, is in law a promise express, and if there be a consideration, it is a foundation for an action. Nor is it revocable, more than the promise of an individual would be. It gives a right of action which cannot afterwards be defeated without consent of the party in whose favor it was made.
But it is insisted, (and here lies the strength of the argument for the defendants,) that as the tax was legally voted, the town had a right to get it in to their treasury, — that but for *27 the illegal act, or the culpable negligence of the assessors, there could be no complaint, no action against them, no call for reimbursement; and that the inhabitants, in their corporate capacity, have no right to raise money to indemnify these faulty officers, so that this vote itself is illegal and not obligatory.
This argument has much plausibility, but we think no substantial weight. It is grounded on the supposition, that towns, in their corporate capacity, have not a right to interpose for the security of their officers who may have innocently erred in the execution of their duty, even when by so doing no member of the corporation is made to suffer, or to pay one cent more than would have been his duty, had no error occurred. In other words, that if money has got into the treasury in discharge of a tax lawfully raised, it shall there remain, though the whole of it has been virtually paid by three of the citizens instead of the whole, all who once paid having recovered back from the three their proportions, on account of an error in the proceedings.
This position, if true, will sanction the grossest injustice, and will tie the hands of the people of the town themselves, however well they may be disposed to act justly and mercifully towards agents who have fallen into a mistake. It is not like the case cited, of a promise to indemnify a public officer for voluntarily doing an illegal act in the execution of his office. There the promise to indemnify is the incitement to a breach of duty, — the consideration for an offence against the laws, — and upon every principle ought to be void. This is the case of an agent or servant, who erroneously executes his trust, but the principal or master receives the fruits, and in consideration of money which has come into his hands, by the very means complained of, having the right still by legal means to obtain his money, and the servant having no other means of redress, he promises to reimburse the servant. This is a good promise and good consideration.
And in another view the consideration is good and legal. Those persons who paid this tax by compulsion, had a right of action against the town, as well as against the assessors. Being unlawfully compelled by an agent of the town, they might *28 have resorted at once to the principal. Instead of this an action is first brought against the assessors, in which the right to recover is determined. All the others but those who had sued, might, but for the interposition of the assessors, have brought their actions against the town ; and in this state of ihings the assessors paid the money, and in so doing, the '■own acknowledges the money was advanced for their use ; and it was so advanced, for it prevented the town from being called upon to refund. Suppose the town itself had chosen to shield the assessors from action, by ordering the money to be refunded to the inhabitants, because the assessment had been incorrectly made ; — could it not have been re-assessed, because the fault was in the assessors ? Certainly it might. What then is the difference between that mode of rectifying the proceedings and the one they chose P We see none. Suppose the servant of one owning land, had, by direction of his master, entered into his woodlot to cut wood, but by mistake had transgressed the line, and cut upon a neighbouring lot. This would be a trespass, for which he is liable to an action. The master, however, receives the wood and uses it or sells it for money. The servant is sued and pays the damages. The master, in consideration of the money received, promises to refund to the servant the money he has paid, acknowledging it was paid to his use. Is not this a good promise, well supported by a consideration ? We think it is. So in the case before us, the assessors act as servants of the town. They by mistake make an invalid assessment. They authorize the collection of the money, but finding out the mistake, they refund it from their own money, the sums collected being paid into the treasury. This is money which the town has no right to hold, and which might be recovered of them. They vote to indemnify their servants, and to take legal means to obtain their own money from those who owe it. The promise thus made is binding, for the consideration is sufficient. They do not ask their officers to do an illegal act, promising to indemnify them, but they promise to pay them for money which in truth and in fact was advanced for their benefit and their use.
In this view of the case, it is clear, that the subsequent vote evoking and rescinding this contract can have no effect. The *29 right ol the assessors to the money was fixed by the first vote, and the town had no further control over the subject, than to execute the promise.
Promises to indemnify officers are not in their own nature vicious or void ; it is only when they are made as inducements to a known and voluntary violation of duty, that they become so. Officers are often indemnified for taking the property of one instead of another, by mistake, and such indemnity is valid. Suppose' a sheriff, with an execution against A, seizes the chattels of .6, supposing them to be A’’s, sells them and pays over the proceeds to the creditor, is then sued and pays the value to B ; the creditor, still having the means of satisfying his debt from the property of A, promises the sheriff to pay him the amount he has received from B’s goods, which the sheriff has paid for, and to levy by execution upon other property of A, which he has it in his power to do : — cannot an action be maintained on this promise ? We think that it may. And that is a case parallel with the one before us ; for here the town had received their debt, by means which rendered their servants liable to an action, they having the right to enforce payment of the debt from those who had drawn it back again from the assessors, and they engage to refund to the assessors what they had paid, and take measures to make the true debtors pa^* We think they are bound by their engagement.
But there is a portion of the money sued for which does no fall within this principle. Over the State and county tax, the inhabitants of the town, in their corporate capacity, have no control. The apportionment on the town is fixed by the legislature and Court of Sessions respectively. The assessment is not made by authority of the town, and the tax, when collected is not paid into the town treasury. The town has no special benefit from it, nor any control over it, nor was it paid by the assessors on behalf of or to the use of the town. We think therefore that the promise to pay this is without consideration, and therefore void. But for so much as relates to the town tax the plaintiff is entitled to recover ; but not for his own tax voluntarily paid, for that does not fall within the promise made by the town.